**Affirmed and Memorandum Opinion filed August 10, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00086-CR

**VITAL GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1533080**

## MEMORANDUM OPINION

This is an opinion on remand from the Texas Court of Criminal Appeals. Appellant Vital Garcia has appealed his conviction for first degree aggravated assault on a family member resulting in serious bodily injury. A jury convicted appellant, and the trial court assessed his punishment at 35 years in prison. In two issues, appellant contended that (1) the evidence was insufficient to establish that the complainant suffered serious bodily injury or that she was appellant's family member, and (2) the trial court erred in refusing to submit a jury instruction on the

lesser included offense of second-degree aggravated assault.

In the original opinion, the majority held that the evidence was insufficient to establish the complainant suffered serious bodily injury. The Court of Criminal Appeals reversed, holding that the evidence was in fact sufficient to support that finding. *Garcia v. State*, 667 S.W.3d 756, 765–66 (Tex. Crim. App. 2023). The Court then remanded the case to this court for consideration of the remaining issues, i.e., whether the evidence was sufficient to prove the complainant was appellant's family member and whether the trial court erred in refusing to submit a jury instruction on a lesser included offense. *Id*. We now affirm the trial court's judgment.

### *Background*[1]

The complainant testified that she was in a dating relationship with appellant. She was 19 when they met, and appellant was "way older." She said that they were together "[n]o more than a year" and although the relationship was "somewhat" good at the beginning, "it wasn't such a great relationship." They lived in two consecutive apartments together. Appellant became physically and verbally abusive when they moved into the second apartment. Complainant said that appellant carried a .40 caliber gun with him "24/7" and threatened to kill her if she cheated on him.

On cross-examination, complainant confirmed that she and appellant were a couple, "did the normal couple things," and "had relations." She did not work during their relationship but stayed home and took care of the apartment. Appellant "[m]ade pretty good money" and shared it with complainant. Both of them were on the lease agreement. Appellant paid for the apartment, food, utilities, and

---

[1] We limit our recitation of the facts in this case to those pertaining to the issues before us. For the facts regarding the assault, please refer to the Court of Criminal Appeals opinion.

2

complainant's car. She said that they were "boyfriend and girlfriend" for a little less than a year. She inconsistently stated that they had lived together at the first apartment for two to three months or five to six months and stated that they had only lived at the second apartment for less than two weeks when appellant shot her. Complainant said that she lived with appellant voluntarily.

On re-direct, complainant stated that she was not in love with appellant and did not have strong feelings for him but stayed with him for financial support. She also said that she had wanted to leave him but was afraid of him. Complainant's medical records, which were also admitted as evidence, reflect that complainant reported it was her "significant other" that shot her.

### *Family Member*

In his first issue, appellant asserts that there was insufficient evidence to support the jury's finding that complainant was a family member of appellant at the time of the alleged assault. In assessing the sufficiency of the evidence to support a conviction, we must consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational trier of fact could have found the challenged element or elements of the crime beyond a reasonable doubt. *See Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we presume that the jury resolved any conflicts in the State's favor and defer to that resolution. *Whatley*, 445 S.W.3d at 166. We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). As judge of the credibility of the witnesses, a jury may choose to believe all, some, or none of the testimony presented. *Cain v. State*, 958

S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997).

Among the possibilities Penal Code section 22.02(b)(1) provides for who can be considered a family member is people in a "dating relationship," as that term is defined by Texas Family Code section 71.0021(b). Section 71.0021(b) provides that

> (b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:
>
> (1) the length of the relationship;
>
> (2) the nature of the relationship; and
>
> (3) the frequency and type of interaction between the persons involved in the relationship.

As the Court of Criminal Appeals has emphasized, the listed factors "are not standalone elements of the offense which the prosecution must prove beyond a reasonable doubt. Instead, they are guideposts for the jury to weigh in evaluating whether the broader definition in Subsection (b)—a 'continuing relationship of a romantic or intimate nature'—is met." *Edward v. State*, 635 S.W.3d 649, 657 (Tex. Crim. App. 2021). Family Code section 71.0021(c) further explains that "[a] casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' under Subsection (b)."

As set out above, complainant testified that she and appellant were boyfriend and girlfriend, were a couple, had been together a little less than a year, and had lived in two consecutive apartments together over several months. She said that they "did the normal couple things" and "had relations." Appellant shared his money with complainant and paid for food and utilities and complainant's car. The police reported that complainant called appellant her boyfriend, and her medical

4

records showed that it was her "significant other" who had shot her.

Complainant also testified, however, that while the relationship was "somewhat" good at the beginning, "it wasn't such a great relationship." Appellant had become abusive after they moved to their second apartment, and complainant said that she was not in love with appellant and did not have strong feelings for him. She said that she stayed with him voluntarily for financial support but also that she had wanted to leave him but was afraid of him.

Appellant argues that complainant's statements that she did not love appellant and stayed with him for the money suggests that they were not, and had not been, in "a continuing relationship of a romantic or intimate nature." Appellant cites no authority that supports reading the statute as requiring love or other strong emotional bonds for the existence of a "dating relationship."

The statute defines a "dating relationship" as "a continuing relationship of a romantic or intimate nature," and it requires consideration of the nature and length of the relationship as well as the frequency and type of interaction. *See* Tex. Fam. Code § 71.0021(b). The jury could have reasonably concluded based on the evidence presented—particularly that appellant and complaint were boyfriend and girlfriend, had been together and lived together for months, "did the normal couple things," and "had relations"—that complainant and appellant were in a dating relationship, regardless of the fact that there may have been a financial component behind why complainant continued to stay with appellant. *See, e.g.*, *Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *7 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication) (holding evidence defendant and complainant were "boyfriend and girlfriend," lived together as a couple, shared their daily routines, slept in the same bed, and engaged in sexual activities was sufficient to demonstrate that they were in a dating relationship); *Hill v. State*, No.

5

01-10-00926-CR, 2012 WL 983338, at *3 (Tex. App.—Houston [1st Dist.] Mar. 22, 2012, no pet.) (mem. op., not designated for publication) (holding evidence was sufficient where complainant referred to the defendant as her "boyfriend" and reported to the police that they had been together "relationally" and complainant and defendant had previously lived together). Accordingly, we find no merit in appellant's second argument under issue one and overrule that issue.

### *Jury Instruction*

In his second issue, appellant contends that the trial court erred in refusing to instruct the jury on the lesser included offense of second-degree aggravated assault. Under this issue, appellant again argues that the evidence suggested appellant and complainant were not in a dating relationship, one of the elements that elevated the alleged aggravated assault in this case to a first-degree felony.

To determine whether a lesser included offense instruction should have been given, we first analyze whether the elements of the lesser included offense are included within the proof necessary to establish the elements of the charged offense and then whether there is evidence in the record that could allow a jury to find the defendant guilty of only the lesser included offense. *See State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013). Under the second prong, the defendant is entitled to an instruction on the lesser included offense when some evidence in the record would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). Although anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser included offense instruction, the evidence must establish the lesser included offense as a valid, rational alternative to the charged offense. *Id*. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State*, 956 S.W.2d 532, 543

6

(Tex. Crim. App. 1997). Rather, there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted. *Id.*

As to the first prong, the State concedes that second-degree aggravated assault is a lesser included offense of first-degree aggravated assault in this case because it is established by proof of less than all of the same elements. *Compare* Tex. Penal Code § 22.02(b) *and* § 22.02(b)(1). *See generally Brown v. State*, No. 12-22-00074-CR, 2023 WL 2533193, at *6 (Tex. App.—Tyler Mar. 15, 2023, pet. ref'd) (mem. op., not designated for publication). Regarding the second prong, appellant again argues that complainant's testimony that she did not love appellant and only continued to stay with him for financial support was evidence that they were not in a dating relationship. A dating relationship is a required element for first degree aggravated assault as charged but not for second degree aggravated assault. Appellant, however, still does not offer any authority that supports reading the governing statutes as requiring love or other strong emotional bonds for the existence of a "dating relationship." *See* Tex. Fam. Code § 71.0021(b); Tex. Penal Code § 22.02(b)(1). As explained above, there is no such requirement in the statutes. Accordingly, the cited testimony did not establish second-degree aggravated assault as a valid, rational alternative to the charged offense of first-degree aggravated assault. *See Hall*, 225 S.W.3d at 536. We overrule appellant's second issue.

## *Conclusion*

Having overruled appellant's two issues, we affirm the trial court's judgment.

_/s/ Frances Bourliot_____
Frances Bourliot
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b).